UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

KEVIN UNDERWOOD,

     Plaintiff,

v.                                                Case No:  2:12-cv-391-Ftm-99SPC

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

## REPORT AND RECOMMENDATION[1]

**TO THE UNITED STATES DISTRICT COURT**

     This matter comes before the Court on Plaintiff's Memorandum of Law in Opposition to the Commissioner's ("Commissioner") Decision Denying Plaintiff Disability Insurance Benefits (Doc. #14) filed on December 10, 2012.  The Commissioner filed a Memorandum of Law in Support of the Commissioner's Decision (Doc. #15) on February 8, 2013.  Thus, the Motion is now ripe for review.

## FACTS

### *Procedural History*

     Plaintiff filed for supplemental security income on April 22, 2009, due to the disabling condition of a back injury beginning on February 1, 2009. (Tr. 27, 105-14, 124, 128).  Plaintiff's application was denied initially and upon reconsideration.  (Tr. 83-87, 89-91).  Plaintiff requested a hearing, which was held by Administrative Law Judge (ALJ) Larry J. Butler on

---

[1] This Report and Recommendation addresses only the issues brought up for review by the District Court pursuant to 42 U.S.C. 405(g).

December 30, 2010.  (Tr. 40-60, 92).  In a decision issued on February 14, 2011, the ALJ denied

Plaintiff's claim.  (Tr. 24-39).  Plaintiff requested review of the ALJ's decision, and the Appeals

Council denied Plaintiff's request on April 20, 2012.  (Tr. 4-6, 22).  Plaintiff filed a complaint in

this Court on July 23, 2012.  This case is now ripe for review under 42 U.S.C. §§ 405(g) and

1383(c)(3).

### *Plaintiff's History*

Plaintiff was 48 years old on the alleged date of disability.  (Tr. 124).  Plaintiff has a high

school education, he completed a GED in 1982, and he worked in the past as a construction

worker, cook, and telemarketer.  (Tr. 34, 129, 132).  Plaintiff claims he is unable to work because

of a back injury.  (Tr. 128).  Plaintiff states that he cannot bend or stoop without serious pain and

that he has problems with lifting and standing for long periods.  (Tr. 128).  Plaintiff also alleges

that he has problems with his right shoulder.  (Tr. 153).

### *Medical History*

On November 13, 2008, Plaintiff complained of experiencing "arthritis pain in [his]

lower back" to N. Dominguez, M.D.  (Tr. 183).  On examination, Dr. Dominguez found that

Plaintiff had limited range of motion with his back and that he was "unable to bend [and] touch

[his] toes w[ith]out distress."  (Tr. 183).

On March 3, 2009, Plaintiff complained of experiencing back, wrist, and foot pain to

Nancy Buthman, ARNP.  (Tr. 215).  On examination, Nurse Buthman found that Plaintiff "was

overweight" with a weight of 228 pounds and a height of 70 inches.  (Tr. 215).  Nurse Buthman

also found that his lumbar spine was "[s]lightly tender on left[;]" he tested positive for a straight

leg raising test on the left; he had a "[h]ard time getting up and down[;]" and he could not "bend

over." (Tr. 215-16).  Nurse Buthman diagnosed Plaintiff as suffering from back, wrist, and leg pain. (Tr. 216).

On May 7, 2009, Plaintiff complained of experiencing back and leg pain to Nurse Buthman. (Tr. 247).  On examination, Nurse Buthman found that Plaintiff was overweight. (Tr. 247).  Nurse Buthman diagnosed Plaintiff as suffering from back, wrist, and leg pain. (Tr. 247).

On May 20, 2009, Plaintiff complained of experiencing "severe back pain [for two days] radiating down to both legs" to Gary McClelland, R.N., while treated at Gulf Coast Medical Center. (Tr. 257).  On examination, Nurse McClelland found that Plaintiff reported that he was in "too much pain to walk" and was currently in a wheelchair.  (Tr. 258).  Plaintiff was diagnosed as suffering from chronic back pain.  (Tr. 263).  On the same date, a view of Plaintiff's lumbar spine revealed "degenerative disc disease most notably at L5-S1" and "[f]acet arthropathy most notably at L5-S1." (Tr. 264).

On June 5, 2009, Plaintiff complained of experiencing back and leg pain to Nurse Buthman. (Tr. 245).  On examination, Nurse Buthman found that Plaintiff's thoracic spine was tender on the right side; his lumbar spine was tender, and he had "difficulty getting up." (Tr. 245).  Nurse Buthman diagnosed Plaintiff as suffering from back and leg pain. (Tr. 246).

On July 6, 2009, Plaintiff complained of experiencing back pain to Nurse Buthman. (Tr. 243).  Nurse Buthman diagnosed Plaintiff as suffering from obesity and back, leg, and shoulder pain. (Tr. 243).

On July 7, 2009, Nurse Buthman completed a RFC questionnaire. (Tr. 227-28).  Nurse Buthman noted that she diagnosed Plaintiff as suffering from lower back, leg, and shoulder pain. (Tr. 227).  She further noted that he exhibited the symptoms of pain and fatigue, which were often severe enough to interfere with attention and concentration required to perform simple

work-related tasks.  (Tr. 227).  Furthermore, she opined that he would need to recline or lie down in an 8-hour day in excess of two 15 minute breaks and a 30-60 minute lunch.  (Tr. 227).  Nurse Buthman further opined that Plaintiff could walk one city block without rest or significant pain; he could sit for 20 minutes at one time; and stand/walk for 15 minutes at one time.  (Tr. 227).  Moreover, Nurse Buthman opined that Plaintiff could sit for 3 hours and stand/walk for 2 hours in an 8-hour workday.  (Tr. 227).  He would also need a job which permitted shifting positions from sitting, standing, or walking; and he would need to take unscheduled breaks every half an hour for 10 minutes.  (Tr. 227).  Nurse Buthman also opined that Plaintiff could lift and carry up to 20 pounds occasionally and less than 10 pounds frequently.  (Tr. 228).  She also opined that he would be absent from work due to his impairments or treatment more than four times a month.  (Tr. 228).  Nurse Buthman further opined that Plaintiff was not a malingerer.  (Tr. 228).

On July 14, 2009, Plaintiff was evaluated by consultative examiner Eshan Kibria, D.O. (Tr. 229).  On examination, Dr. Kibria found that Plaintiff's "passive pain free neck range of motion was moderately limited in rotation to the right[;] [his] [s]houlder range of motion was moderately limited in abduction and external rotation on the right[;]" and he experienced "[p]ain to palpation [in his] right wrist."  (Tr. 230).  Additionally, Dr. Kibria found that Plaintiff's "[p]assive pain free lumbar range of motion was moderately limited in all directions" and "[s]traight leg raise was positive at 70 deg[rees] [b]ilaterally."  (Tr. 230).  Furthermore, Dr. Kibria found that Plaintiff had "[s]ome trouble getting out of [the] chair" and his AC joint was "tender to palpation."  (Tr. 230).  Dr. Kibria diagnosed Plaintiff as suffering from chronic low back pain with radiation into his legs; and right shoulder impingement syndrome, "probably arthritic."  (Tr. 230).

On July 20, 2009, Single Decisionmaker ("SDM") Abbey Falconer completed a physical RFC assessment form. (Tr. 234-41). SDM Falconer determined that Plaintiff could never climb ladders, ropes, or scaffolds; or crawl. (Tr. 236). He could occasionally climb ramps and stairs; balance; stoop; kneel; and crouch. (Tr. 236). SDM Falconer further determined that Plaintiff was limited in reaching in all directions including overhead. (Tr. 237).

On August 6, 2009, Plaintiff complained of experiencing back pain to Nurse Buthman. (Tr. 242). Nurse Buthman diagnosed Plaintiff as suffering from obesity and back pain. (Tr. 242).

On August 12, 2009, Plaintiff complained of experiencing a "sudden sharp pain in his back" while receiving treatment at Gulf Coast Medical Center. (Tr. 249). Plaintiff was diagnosed as suffering from lower back strain. (Tr. 254).

On September 2, 2009, Plaintiff complained of experiencing back and bilateral leg pain to Nurse Buthman. (Tr. 312). Nurse Buthman diagnosed Plaintiff as suffering from back and leg pain. (Tr. 312).

On October 8, 2009, Plaintiff complained of experiencing back, shoulder, and bilateral leg pain to Nurse Buthman. (Tr. 310). On examination, Nurse Buthman found that Plaintiff's shoulders were tender. (Tr. 310). Nurse Buthman diagnosed Plaintiff as suffering from obesity and back pain. (Tr. 310).

On October 21, 2009, State agency review physician, John Dawson, M.D., completed a physical RFC assessment form. (Tr. 265-72). Dr. Dawson diagnosed Plaintiff as suffering from lumbar spine degenerative disc disease and arthralgia/myalgia of the right shoulder. (Tr. 265). Dr. Dawson opined that Plaintiff could never climb ladders, ropes, or scaffolds; and could occasionally stoop, kneel, crouch, and crawl. (Tr. 267). Additionally, Dr. Dawson found that

Plaintiff was limited to occasional reaching in all directions including overhead with his right shoulder.  (Tr. 268).

On November 12, 2009, Plaintiff complained of experiencing shoulder, back, and leg pain to Nurse Buthman.  (Tr. 309).  On examination, Nurse Buthman found that Plaintiff was "[i]n acute distress[;]" his "[b]ack, hips, . . .legs[,] and shoulders [were] hurting[;]" it was painful for him to walk; and he could not sit or stand.  (Tr. 309).  Nurse Buthman diagnosed Plaintiff as suffering from back, hip, and leg pain; and obesity.  (Tr. 309).

On November 17, 2009, Plaintiff complained of experiencing shoulder and back pain to Christopher Robben, M.D.  (Tr. 274).  Dr. Robben diagnosed Plaintiff as suffering from "[a]cute on chronic shoulder and back pain."  (Tr. 282).

On January 2, 2010, Plaintiff complained of experiencing chronic low back pain to J. Wilson, R.N., while treating at Gulf Coast Medical Center.  (Tr. 289).  On examination, Nurse Wilson found that Plaintiff experienced a constant, aching, and throbbing pain rated as a 10 out of 10 in his lower back.  (Tr. 289-90).  Additionally, Nurse Wilson found that Plaintiff had an "altered gait."  (Tr. 290).  Plaintiff was diagnosed as suffering from low back pain.  (Tr. 292).

On January 25, 2010, Plaintiff was treated by Nurse Buthman.  (Tr. 306-07).  On examination, Nurse Buthman found that Plaintiff was overweight.  (Tr. 306).  Nurse Buthman diagnosed Plaintiff has suffering from obesity; and back, hip, and leg pain.  (Tr. 306).

On February 24, 2010, an MRI of Plaintiff's lumbar spine revealed "focal degenerative disc disease present at L5-S1 with loss of intervertebral disc height and intervertebral disc dessication."  (Tr. 293).  "At L4-5, there [wa]s mild bilateral facet arthropathy without disc herniation" and "[a]t L5-S1, there [wa]s circumferential disc osteophyte complex causing

moderate to severe right and moderate left neural stenosis." (Tr. 293). Furthermore, at L5-S1 there was "bilateral facet arthropathy" and "right lateral recess stenosis." (Tr. 293).

On March 3, 2010, Plaintiff complained of experiencing back pain to Nurse Buthman. (Tr. 304). Nurse Buthman diagnosed Plaintiff as suffering from back, hip, and leg pain. (Tr. 305).

On April 14, 2010, Plaintiff complained of experiencing back and leg pain to Nurse Buthman. (Tr. 302). On examination, Nurse Buthman found that Plaintiff was obese and that he experienced "chronic back pain radiating to [his] lower leg." (Tr. 302-03). Nurse Buthman diagnosed Plaintiff as suffering from back pain. (Tr. 303).

On July 12, 2010, Plaintiff complained of experiencing chronic back pain to James Taylor, D.O. (Tr. 299). On examination, Dr. Taylor found that Plaintiff had abdominal tenderness. (Tr. 299). Dr. Taylor diagnosed Plaintiff as suffering from obesity and back and leg pain. (Tr. 299).

On September 13, 2010, Plaintiff complained of experiencing back pain radiating to both legs to Marcia Gilkes, ARNP. (Tr. 322). On examination, Nurse Gilkes found that Plaintiff was overweight; his "[l]ower back exhibited tenderness on palpation[;]" and his "[l]umbosacral spine pain was elicited by flexion . . . [and] extension." (Tr. 323). Nurse Gilkes diagnosed Plaintiff as suffering from obesity and back pain. (Tr. 323).

### *Administrative Law Judge's Decision*

In his decision, the ALJ found that Plaintiff has not engaged in substantial gainful activity since April 22, 2009, the application date. (Tr. 29). He found that Plaintiff suffered from the severe impairments of low back pain radiating to his leg and knees; and right shoulder impingement. (Tr. 29). Additionally, the ALJ found that Plaintiff did not have an impairment or

combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 29).

Furthermore, the ALJ determined that Plaintiff had the following residual functional capacity ("RFC"):

> to perform the full range of light work as defined in 20 C.F.R. [§] 416.967(b). [Plaintiff] has the ability to lift and carry 20 pounds occasionally and 10 pounds on a frequent basis, stand and/or walk for a total of about six hours in an eight-hour workday, and has unlimited ability to push and/or pull (including operation of hand and foot controls). He has the ability to frequently balance, and climb ramps and stairs, but never climb ladders, ropes, or scaffolds. He can occasionally stoop, kneel, crouch, and crawl.  He is limited to occasionally reaching overhead with [his] right arm, but can use his left arm constantly to reach overhead.

(Tr. 29-30).  Additionally, the ALJ found that Plaintiff was "capable of performing past relevant work as a telemarketer."  (Tr. 34).  Thus, the ALJ found that Plaintiff was not disabled.  (Tr. 34).

## STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, and whether the findings are supported by substantial evidence.  Hibbard v. Comm., 2007 WL 4365647 at *2 (M.D. Fla. Dec. 12, 2007) (citing Richardson v. Perales, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed 2d 842 (1971); McRoberts v. Bowen, 841 F. 2d 1077, 1080 (11th Cir. 1988)).  In evaluating whether a claimant is disabled, the ALJ must follow the sequential inquiry described in the regulations.[2] 20 C.F.R. §§ 404.1520(a), 404.920(a).  The

---

[2] The inquiry requires the ALJ to engage in a five-step analysis, which will either preclude or mandate a finding of disability.  The steps are as follows:

*Step 1.*  Is the claimant engaged in substantial gainful activity?  If the claimant is engaged in such activity, then he or she is not disabled.  If not, then the ALJ must move on to the next question.

*Step 2.*  Does the claimant suffer from a severe impairment?  If not, then the claimant is not disabled.  If there is a severe impairment, the ALJ moves on to step three.

*Step 3.*  Does the claimant's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  If so, then the claimant is disabled.  If not, the next question must be resolved.

*Step 4.*  Can the claimant perform his or her former work?  If the claimant can perform his or her past relevant work, he or she is not disabled.  If not, the ALJ must answer the last question.

*Step 5.*  Can he or she engage in other work of the sort found in the national economy?  If so, then the claimant is not disabled.  If the claimant cannot engage in other work, then he or she is disabled.  See 20 C.F.R. §§404.1520(a)-(f), 416.920(a)-(f).

ALJ's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion."  Hibbard, 2007 WL 4365647 at *2 (citing Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838-39 (11th Cir. 1982)); Richardson, 402 U.S. at 401.

Where the ALJ's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the ALJ's decision.  Phillips v. Barnhart, 357 F. 3d 1232, 1240 n.8 (11th Cir. 2004).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Foote, 67 F.3d at 1560; Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings).

The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]."  Phillips, 357 F. 3d at 1240 n.8; Dyer v. Barnhart, 395 F. 3d 1206, 1210 (11th Cir. 2005).  If the ALJ's decision is supported by substantial evidence, it should not be disturbed.  Lewis v. Callahan, 125 F. 3d 1436, 1439 (11th Cir. 1997).

## DISCUSSION

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416 (I), 423 (d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the Plaintiff unable to do his or her previous work, or any other substantial

gainful activity which exists in the national economy. 42 U.S.C. § 423 (d)(2); 20 C.F.R. §§ 404.1505-404.1511.

In this case, the Plaintiff asserts that the ALJ committed the following errors for which remand is required: (1) the ALJ's residual functional capacity finding is unsupported by substantial evidence: (2) the ALJ's credibility determination is unsupported by substantial evidence; and (3) the ALJ's Step 4 determination is unsupported by substantial evidence.   The Court will consider each issue in turn.

_(1) Whether the ALJ's residual functional capacity is supported by substantial evidence_

To determine whether a claimant can perform his past relevant work, the ALJ first makes a finding as to the claimant's RFC, which is the most the claimant can do despite his limitations. 20 C.F.R. §§ 416.920(e), 416.945(a).   In this case, the ALJ determined that Plaintiff had the following RFC:

> to perform the full range of light work as defined in 20 C.F.R. [§] 416.967(b).
> [Plaintiff] has the ability to lift and carry 20 pounds occasionally and 10
> pounds on a frequent basis, stand and/or walk for a total of about six hours in
> an eight-hour workday, and has unlimited ability to push and/or pull
> (including operation of hand and foot controls). He has the ability to
> frequently balance, and climb ramps and stairs, but never climb ladders, ropes,
> or scaffolds. He can occasionally stoop, kneel, crouch, and crawl. He is
> limited to occasionally reaching overhead with [his] right arm, but can use his
> left arm constantly to reach overhead.

(Tr. 29-30).  Plaintiff mainly argues that in making this determination the ALJ erred by failing to state what weight was afforded to Nurse Buthman's opinion and therefore the matter should be remanded for further proceedings and the proper weighing of Nurse Butham's opinions.  Plaintiff further asserts that the ALJ noted that "given [Plaintiff's] allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on [Plaintiff] by the treating doctor. Yet a review of the record in this case reveals no

restrictions recommended by the treating doctor." (Tr. 33). Plaintiff argues that the ALJ failed to consider that Plaintiff did not have a treating doctor, but instead treated with Nurse Buthman, who completed a RFC questionnaire on July 7, 2009. (Tr. 227-28). Nurse Buthman opined that Plaintiff's symptoms of pain and fatigue were often severe enough to interfere with attention and concentration required to perform simple work-related tasks. (Tr. 227). Furthermore, she opined that he would need to recline or lie down in an 8-hour day in excess of two 15 minute breaks and a 30-60 minute lunch. (Tr. 227). Nurse Buthman also opined that Plaintiff could walk one city block without rest or significant pain; he could sit for 20 minutes at one time; and stand/walk for 15 minutes at one time. (Tr. 227). Moreover, Nurse Buthman opined that Plaintiff could sit for 3 hours and stand/walk for 2 hours in an 8-hour workday. (Tr. 227). He would also need a job which permitted shifting positions from sitting, standing, or walking; and he would need to take unscheduled breaks every half an hour for 10 minutes. (Tr. 227). Nurse Buthman also opined that Plaintiff could lift and carry up to 20 pounds occasionally and less than 10 pounds frequently. (Tr. 228). She also opined that he would be absent from work due to his impairments or treatment more than four times a month. (Tr. 228). Nurse Buthman further opined that he was not a malingerer. (Tr. 228). Nurse Butham, who is a nurse practitioner, was not explicitly mentioned by the ALJ in his decision. She treated Plaintiff from March 3, 2009 to April 14, 2010. (Tr. 214-16, 242-48, 302-07, 309-12).

Plaintiff's argument is without merit because the ALJ was not required to explicitly address Nurse Butham's opinion, as noted by the Eleventh Circuit:

> In order for a statement to be characterized as a 'medical opinion,' it must be from an acceptable source and address acceptable subject matter. 20 C.F.R. § 404.1527(a)(2). First, a medical opinion must be a statement from a physician, a psychologist, or another 'acceptable medical source.' Other acceptable medical sources do not include nurses, physicians' assistants, or therapists. See 20 C.F.R. §§ 404.1502 (defining acceptable medical source as those enumerated in §

404.1513(a)); 404.1513(d)(1) (listing medical sources that fell outside of the
definition of 'acceptable medical source').

Lawton v. Comm'r of Social Sec., 431 F. App'x 830, 834-35 (11th Cir. June 22, 2011).  Thus,

the ALJ's failure to state what weight was afforded to Nurse Buthman's opinion was not in error.

The ALJ's RFC finding is supported by physical examinations of Plaintiff which show he

was able to ambulate (move from place to place) without difficulty, his pain level decreased with

medication, he was only moderately limited in his ability to move his lumbar spine without pain,

he was able to walk on his heels and toes with no evidence of weakness, he had full motor

strength (5/5), he had no loss of sensation, and his gait was normal.  (Tr. 31-32, 223, 230, 231,

254, 263). Physical examinations in November 2009 also show that Plaintiff ambulated easily, he

had no paralumbar tenderness, he had a negative straight leg raise, he had no neurological

deficits, his pain was controlled, and he was able to reposition himself easily.  (Tr. 32, 274, 292).

The ALJ's RFC finding that Plaintiff can perform light work with certain nonexertional

limitations is also supported by the medical opinion of state agency medical consultant John A.

Dawson, M.D. (Tr. 33, 265-72).  See 20 C.F.R. § 416.927(e)(2)(i) (explaining that state agency

medical consultants are "highly qualified physicians . . . who are also experts in Social Security

disability evaluation" and that the ALJ must consider their findings and opinions); SSR 96-6p;

Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986) (recognizing an ALJ properly relied on

the opinions of the non-examining, non-treating physicians).  Based on his review of the medical

evidence and other evidence, Dr. Dawson opined that Plaintiff could perform light work,

including that he could lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand

and/or walk six hours in an eight-hour day, sit about six hours in an eight-hour day, and that he

had unlimited ability to push and/or pull.  (Tr. 266).  Dr. Dawson further opined that Plaintiff

could frequently climb ramps and stairs and balance, occasionally stoop, kneel, crouch, and crawl, but never climb ladders, ropes, or scaffolds (Tr. 267).

The ALJ's discussion of the evidence shows his reasoning for finding Plaintiff not disabled and capable of light work.  (Tr. 31-33). Specifically, the ALJ discussed Plaintiff's physical examinations, the fact that Plaintiff's allegations of disabling limitations were inconsistent with what the objective medical evidence showed he could do, and that the medical opinion of Dr. Dawson showed that Plaintiff could perform light work:

> On November 28, 2008, the claimant complained of back pain, joint pain, and arthritis.  Physical examination revealed no swelling or redness, and the claimant was able to ambulate without difficulty.
>
> * * *
>
> In a July 14, 2009, consultative examination report, Esham M. Kibria, M.S., M.B.A., D.O., reported that . . . [h]e was able to walk on heels and toes, and no evidence of weakness, pronation, or drift in any muscular group.  Graded motor strength of all four extremities was 5/5 including hand grips.  Sensory testing to modalities of pain, position, and vibration showed no evidence of loss nor were there areas of hyperpathia or localized tenderness.  Dr. Kibria noted the claimant had some trouble getting out of chair, but afterwards had normal gait with no assistive device.
>
> * * *
>
> On November 17, 2009, . . . [e]xamination revealed no paralumbar tenderness, negative straight leg raise bilaterally, normal dorsiflexion and plantar flexion, and no neurological focal deficits.  He was able to move all upper and lower extremities.  The physician stated that the claimant was resting comfortably, his pain was controlled, and he was discharged with Ibuprofen and Tramadol.
>
> * * *
>
> In sum, the above residual functional capacity assessment is supported by the residual functional capacity conclusions reached by John A. Dawson, M.D., a physician employed by the State Disability Determination Services who also support a finding of 'not disabled.'  He opined that the claimant was capable of light exertion work activity.  His medical opinion was considered within the context of Social Security Ruling 96-6p.  His assessment was based on a thorough review of the evidence and is consistent with the evidence of record.

(Tr. 31-33) (internal citations omitted).

Given that the ALJ relied on this evidence, including giving significant weight to Dr. Dawson's opinion, a reviewer is able to follow the ALJ's reasoning. Thus, the undersigned recommends that substantial evidence supports the ALJ's RFC finding.

### (2) Whether the ALJ's credibility determination is supported by substantial evidence

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however . . . [Plaintiff's] statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment." (Tr. 31). Plaintiff argues that in making this determination, the ALJ failed to apply the appropriate legal standards. Plaintiff asserts that once an ALJ has found an underlying medically determinable impairment that could reasonably be expected to produce a claimant's pain and other symptoms, he is required to evaluate the intensity and persistence of the symptoms. Citing 20 C.F.R. § 416.929(c)(1). Regarding Plaintiff's measures to relieve his symptoms, Plaintiff argues that the ALJ failed to consider that when attending church services Plaintiff's "pastor allow[s] [him] to stand up and.. . sit down." (Tr. 57).

Regarding Plaintiff's symptoms and limitations, the ALJ stated:

> The claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> * * *
>
> The undersigned finds that the record contains clear evidence that the claimant has consciously attempted to portray limitations that are not actually present in order to increase the change [sic] of obtaining benefits. On May 20, 2009, the claimant complained of severe back pain radiating down to both legs with mild numbness and tingling. He stated that he was in 'too much pain to walk'. He was helped out of bed, then he walked to the wheelchair, full weight bearing. He again was full weight bearing when he used the restroom. He also stood while using the bathroom. Again, on January 2, 2010, the claimant had complaints of

severe and chronic back pain on a pain level of 10 on a scale of 1-10. While there, it was noted that he was able to reposition himself in bed easily and moved with some difficulty only when the nurse was present.

As for the opinion evidence, given the claimant's allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on the claimant by the treating doctor. Yet a review of the record in this case reveals no restrictions recommended by the treating doctor.

(Tr. 31-33). Plaintiff argues that by discrediting the severity of Plaintiff's symptoms and impairments based on the ALJ's interpretation of these two treatment notes, the ALJ has improperly substituted his judgment for that of a medical professional. Plaintiff further argues that the ALJ erred by referencing Plaintiff's RFC in his credibility finding because the ALJ's reference implies that the ALJ did not consider the entire case record when determining Plaintiff's credibility.

Where an ALJ decides not to credit a claimant's testimony about pain or other symptoms, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Foote v. Chater, 67 F.3d 1553, 1561-1562 (11th Cir. 1995); Jones v. Department of Health and Human Services, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. Hale v. Bowman, 831 F.2d 1007, 1012 (11th Cir. 1987); MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986). As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. Foote, 67 F.3d at 1561-62; Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility

determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote, 67 F.3d at 1562 (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir.1983) (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court)).  It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971).  Daily activities are to be considered with respect to the credibility of the reported symptoms.  See 20 C.F.R. § 402.1529(a).  In this regard, the Plaintiff testified that a typical day consists of him getting up between 5:00 a.m. and 7:00 a.m. He is able to dress himself, prepare small meals using a microwave, make the bed, go to church every Sunday and Thursday night, and prepare things for the kids at church.  His wife does the cooking, and drives him around because he does not have a driver's license.  He never had a license, but stated he is going to get one.  He goes to bed between 9:00 p.m. and 11:00 p.m., but sleeps only three to four hours per night, tossing and turning.

To arrive at his credibility finding, the ALJ reviewed Plaintiff's complaints of symptoms, including that, allegedly, he had limitations bending and lifting and that he had pain when doing any activity.  (Tr. 30-31).  The ALJ then reviewed the evidence of record in comparison to Plaintiff's allegations (Tr. 31-34).  See 20 C.F.R. § 416.929(c).  The ALJ noted some evidence which supported Plaintiff's allegations of limitations with bending, and accounted for such limitations in his RFC finding by limiting Plaintiff to only occasional bending (stooping and crouching).  (Tr. 30, 31).  The ALJ also limited Plaintiff's ability to lift to no more than 20 pounds occasionally and 10 pounds frequently, which was consistent with Plaintiff's allegations. (Tr. 30, 31).

The ALJ further noted that the results of several physical examinations showed that Plaintiff had greater work ability than what he alleged and, thus, the evidence conflicted with his allegations that his pain was disabling and showed his statements were not credible. (Tr. 31-33). See 20 C.F.R. § 416.929(c); SSR 96-7p. Specifically, the ALJ observed that physical examinations showed Plaintiff was able to ambulate (move about) without difficulty and his pain decreased to a level of 4 out of 10 with medication. (Tr. 31, 32). The ALJ also noted that during a May 2009 visit to the emergency room, although he reported he was in too much pain to walk, he was able to walk full weight bearing and stand to use the restroom. (Tr. 31, 33, 258, 263). At a November 2009 emergency room visit, Plaintiff ambulated easily, was not in any distress and able to rest comfortably. (Tr. 32, 274). Further, he denied weakness, had a negative straight leg raise, he was able to move all his extremities, and his pain was controlled. (Tr. 32, 274). On January 2, 2010, although Plaintiff stated that he was in constant pain and displayed difficulty moving when the nurse was present, he was observed being able to reposition himself in bed easily. (Tr. 32, 33, 392). Plaintiff's allegations of disabling limitations were also inconsistent with results of the consultative examination by Esham M. Kibria, M.D. which showed that while Plaintiff was moderately limited in the range of motion in his back, he was able to walk on heels and toes with no evidence of weakness, he had a normal gait and did not need an assistive device, he had full muscle strength, including in his hands, and he had no loss of sensation and no localized tenderness. (Tr. 32, 229-30). Plaintiff's allegations that his pain was disabling were inconsistent with the evidence as reviewed above.

The ALJ's use of Plaintiff's ability to walk during his emergency room visit as a factor undermining his credibility is further supported by the state agency physician Dr. Dawson, who

also observed that Plaintiff's ability to walk full weight bearing during this visit detracted from his credibility.  (Tr. 270).

Therefore, the undersigned recommends that the Plaintiff has failed to set forth a meritorious basis for challenging the ALJ's credibility determination. That determination is supported by substantial evidence, and the Plaintiff has not identified any evidence which compels a contrary conclusion.  Arnold v. Heckler, 732 F.2d 881, 883-84 (11th Cir. 1984).  The court is not free to reweigh the evidence or substitute its judgment for that of the Commissioner. Bloodsworth v. Heckler, 703 F.2d at 1239.

### *(3) Whether the ALJ's Step Four determination is supported by substantial evidence*

At Step Four, the ALJ determined that Plaintiff was "capable of performing past relevant work" as a telemarketer.  (Tr. 34).  Plaintiff argues that the ALJ's Step Four determination is unsupported by substantial evidence because Plaintiff's work as a telemarketer did not constitute substantial gainful activity and the ALJ failed to make the required specific findings of fact as to the requirements of Plaintiff's past work.

At the fourth step of the sequential evaluation process, the ALJ determines whether a claimant's RFC would allow him to perform any of his past relevant work.  See 20 C.F.R. §§ 416.920(a)(4)(iv),(f),416.960(b)(3); SSR82-62.  If a claimant can perform any of his past relevant work as he performed it or as it is generally performed, he will be found not disabled. See id.  Past relevant work is work that was done within the past 15 years, that was substantial gainful activity (SGA), and that the claimant did long enough to learn how to perform the work. 20 C.F.R. §§ 416.960(b)(1); 416.965(a)(1).  A claimant bears the burden of showing that his past work experience is not "past relevant work," see Barnes v. Sullivan, 932 F.2d 1356, 1359 (11th Cir. 1991), and bears the burden of proving that he cannot perform any past relevant work, see

<u>Jackson v. Bowen</u>, 801 F.2d 1291, 1293-94 (11th Cir. 1986).  Substantial gainful activity is work that involves significant mental and physical activities and is usually performed for pay or profit. 20 C.F.R. § 404.1572. "Substantial" work activity is "work activity that involves doing significant physical or mental activities. . . . [W]ork may be substantial even if it is done on a part-time basis or . . . less, [one] get[s] paid less, or ha[s] less responsibility than . . . before." <u>Id.</u> Work activity is "gainful" if it "is the kind of work usually done for pay or profit, whether or not a profit is realized." <u>Id.</u> Among the factors to be considered in determining whether work is substantial gainful activity are time spent in the work; quality of the performance; whether the worker is self-employed; the need for special conditions or supervision; use of experience, skills, and responsibilities; and whether work contributes substantially to the operation of the business. <u>Johnson v. Sullivan</u>, 929 F.2d 596, 597 (11th Cir. 1991) (citing 20 C.F.R. § 404.1573).

The ALJ found Plaintiff had past relevant work as a telemarketer and that work as a telemarketer was light and semiskilled.  (Tr. 34).  Considering that Plaintiff had the RFC for a reduced range of light work, the ALJ found that Plaintiff could perform his past relevant work as a telemarketer as it was actually and generally performed.  (Tr. 34).

First, Plaintiff asserts that the ALJ's errors in determining Plaintiff's RFC and determining Plaintiff's credibility under the Step Four determination was unsupported by substantial evidence.  The undersigned recommends that this argument is without merit as the Court has recommended above that Plaintiff's RFC is supported by substantial evidence.

Second, Plaintiff asserts that Plaintiff's past work as a telemarketer was not substantial gainful activity.  Plaintiff reported that he was a telemarketer from 2000 to 2004. (Tr. 129). Plaintiff's reported income for this period was $104.28 in 2000; $8,478.11 in 2001; $4,981.01 in 2002; $1,112.00 in 2003; and $543.34 in 2004.  (Tr. 120-21).  Earnings above a certain dollar

threshold level create a presumption of substantial gainful activity, but this is a rebuttable presumption. Johnson, 929 F.2d at 598. The regulations use earnings guidelines to assist in the determination of whether a claimant's past work constitute substantial gainful activity. See 20 C.F.R. §§ 404.1574, 416.974. Generally, a claimant who has worked for substantial earnings, will be found able to do SGA. Id. §§ 404.1574(a)(1), 416.974(a)(1). The amount to be earned to amount to substantial gainful activity was $700 per month in 2000; $740 per month in 2001; $780 per month in 2002; $800 per month in 2003; and $810 per month in 2004.  20 C.F.R. § 416.974(b)(2).  Averaging this out, Plaintiff argues that his per month income was $8.69 in 2000; $706.50 in 2001; $415.08 in 2002; $92.66 in 2003; and $45.27 in 2004.  (Tr. 120-21).  Plaintiff bases his argument on the fact that if his yearly earnings as a telemarketer are divided over the number of months in a year, his average monthly salary does not exceed the monetary indicator for SGA.  Thus, Plaintiff concludes that because his monthly income as a telemarketer did not equal or exceed the amount for required for SGA from 2000 to 2004 when he worked as a telemarketer, the ALJ erroneously determined that Plaintiff's past work as a telemarketer was past relevant work.  (Tr. 34).

The Court recommends that Plaintiff's method of calculating his average monthly earnings is not the most appropriate method given his report that he worked "on and off" as a telemarketer.  (Tr. 45).  Because his work as a telemarketer was not continuous, averaging his earnings over the entire year does not accurately reflect whether his work was SGA. See 20 C.F.R. § 416.974a(a) (providing that earnings will be averaged over the entire period of work if the work was "continuous without significant change in work patterns or earnings").  A more accurate evaluation of whether Plaintiff's work as a telemarketer was SGA would be to evaluate Plaintiff's own report of his work schedule and earnings.  Plaintiff reported that when he did

work he worked eight hours per day, six days per week, at a rate of $6.00 an hour.  (Tr. 129, 143).  As such, Plaintiff's monthly earnings would be approximately $1152.00 ($6.00/hour * 48 hours/week * 4 weeks).  This amount qualifies Plaintiff's work as a telemarketer as substantial gainful activity for the years of 2001 and 2002, when his earnings show that he at least worked this amount.  (Tr. 120-21).  Thus, since Plaintiff was engaged in SGA within the past 15 years, his work as a telemarketer qualifies as past relevant work and the ALJ did not err in considering such work.  See 20 C.F.R. §§ 416.960(b)(1); 416.965(a)(1).

Plaintiff next argues that the ALJ determined that Plaintiff's past work as a telemarketer was "described as light, semi-skilled work."  (Tr. 34).  However, Plaintiff alleges that it is unclear from the decision the basis upon which the ALJ determined that Plaintiff's former position was light and semi-skilled.  See 20 C.F.R. § 405.370 (stating that the ALJ is required to "prepare a written decision that explains in clear and understandable language the specific reasons for the decision.").  The undersigned recommends that this argument is without merit.  In a work history report, Plaintiff stated that the heaviest weight he lifted was 10 pounds and that he did not have to frequently lift any amount.  (Tr. 144).  Plaintiff reported that he sat 6 hours, walked 15 minutes, and stood 1 hour each day.  (Tr. 144).  He further reported that work as a telemarketer did not require climbing, kneeling, crouching or crawling and required only 15 minutes each of stooping and reaching a day.  (Tr. 144).  Plaintiff stated that he used a computer and technical knowledge and skills, but that he did not do any writing or complete reports.  (Tr. 144).  Given Plaintiff's RFC and his statements about the requirements of his job as a telemarketer, substantial evidence supports the ALJ's finding that he can perform this work as it was actually performed.  (Tr. 34).

Finally, Plaintiff argues that the ALJ compared Plaintiff's RFC "with the physical and mental demands" of his telemarketer work to find that he was "able to perform it as actually and generally performed."  (Tr. 34).  However, the ALJ failed to make specific findings of the strength, endurance, manipulative ability, mental demands and other job requirements of Plaintiff's past work besides generally noting it was "described as light, semi-skilled work."  (Tr. 34).  The undersigned recommends that this argument is likewise without merit.  Remand is not warranted for the ALJ to make further findings as to the requirements of Plaintiff's past relevant work because Plaintiff has not shown that he was prejudiced by the ALJ's lack of articulation as to the requirements of his past relevant work.  See Hall v. Schweiker, 660 F.2d 116, 119 (5th Cir. 1981) (cited in Carroll v. Soc. Sec. Admin., Comm'r, 453 F. App'x 889, 892 (11th Cir. 2011) ("we have held that an agency's violation of its own governing rules must result in prejudice before we will remand to the agency for compliance")).  Plaintiff is not prejudiced because he has not presented sufficient evidence to show that he cannot perform his past relevant work as a telemarketer as he himself described it.  As discussed *supra*, Plaintiff has failed to meet his burden of showing he cannot perform his past relevant work as he actually performed it, and thus, the ALJ's decision finding Plaintiff not disabled should be affirmed.  See 20 C.F.R. § 416.920(f); Macia v. Bowen, 829 F.2d 1009, 1012 (11th Cir. 1987).

## CONCLUSION

The overall record, discussed above, provides substantial support for the ALJ'S decision. Thus, the undersigned recommends that the decision of the Commissioner be affirmed.

Accordingly, it is now

**RESPECTFULLY RECOMMENDED:**

The decision of the Commissioner be **AFFIRMED**.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**Respectfully recommended** at Fort Myers, Florida, this 4th day of April, 2013.

SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies:  All Parties of Record